# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| TIMOTHY ALLEN GRIFFITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:23-CV-35-RHH |
| | ) |
| MARTIN O'MALLEY,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Timothy Allen Griffith's appeal regarding the denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* (the "Act"). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 6.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will reverse the Commissioner's denial of Griffith's application and remand for further proceedings.

**I.    Background**

The Court adopts the statement of facts set forth in Griffith's statement of facts (ECF No. 10-1), Defendant's response (ECF No. 11-1), and Griffith's reply (ECF No. 12-1). Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley shall be substituted for Kilolo Kijakazi as the defendant in this suit. *See* 42 U.S.C. § 405(g).

On or about June 25, 2020, Griffith applied for DIB, alleging that he has been unable to work due to disability since May 13, 2020. (Tr. 192-198.) Griffith alleged disability due to peripheral vision issues, neuropathy, lower back pain, chronic pain, major and minor stroke, neck pain, and mood swings. (Tr. 237.) His application was initially denied. (Tr. 110.) Then, he filed a request for Hearing by Administrative Law Judge (ALJ). (Tr. 126-127.) On March 10, 2022, the ALJ held a hearing on Griffith's claim. (Tr. 32-59.) Griffith was represented by counsel at the hearing, and an impartial vocational expert testified. *Id.*

In a decision issued on March 30, 2022, the ALJ found Griffith was not disabled as defined in the Act from the alleged onset date through the date of decision. (Tr. 9-21.) On May 3, 2022, Griffith filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council. (Tr. 186-88.) On January 23, 2023, the Appeals Council denied Griffith's request for review, and adopted the ALJ's decision in full. (Tr. 1-5.)

**II.     Standard for Determining Disability Under the Act**

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

### III.  The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ here found that Griffith meets the insured status requirements of the Social Security Act through June 30, 2023, and that Griffith had not engaged in substantial gainful activity since May 13, 2020, the alleged onset date. (Tr. 11.) Next, the ALJ found that Griffith has the following severe impairments: degenerative changes to the cervical spine, status post cervical fusion, and a history of occipital stroke causing left homonymous hemianopsia. (Tr. 12.) The ALJ found that Griffith's low testosterone,

3

gastroesophageal reflux disease, high cholesterol, hypertension, mood disorder, and stimulant use disorder were non-severe impairments.

The ALJ determined that Griffith did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. The ALJ also determined that Griffith had the residual functional capacity to perform light work with nonexertional limitations. Specifically, the ALJ found that

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps and stairs and never climb ladders, ropes, and scaffolds. He can occasionally balance. The claimant can perform no tasks requiring left peripheral vision or depth perception. He must avoid concentrated exposure to vibration and hazards such as moving machinery and unprotected heights.

(Tr. 15.) The ALJ found that Griffith was capable of performing past relevant work as a Retail Store Manager (Dictionary of Occupational Titles (DOT) No. 185.167-046, SVP 7, light work as generally performed and medium to heavy work as actually performed); and Receptionist (DOT No. 237.367-038 SVP 4, sedentary work as generally and actually performed). (Tr. 19). Therefore, the ALJ concluded that Griffith was not disabled, as defined in the Act, from May 13, 2020, through March 30, 2022. (Tr. 20.)

## IV.   Standard for Judicial Review

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether

it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

**V.    Discussion**

Griffith challenges the ALJ's opinion in two ways. First, Griffith contends that the ALJ failed to comply with SSR 96-8p by failing to include any limitations related to Griffith's mental impairments in the RFC. Second, Griffith contends the ALJ failed to properly evaluate Griffith's subjective reports of his pain.

5

A. **Evaluation of Mental Impairments**

Griffith argues that the ALJ made two errors concerning Griffith's mental impairments: 1) failure to account for Griffith's mild mental limitations in the RFC; and 2) failure to evaluate whether the mental impairments impacted Griffith's ability to do the more complex work tasks required of his past relevant work at the semi-skilled and skilled level. Defendant does not dispute that there was no robust discussion of mental impairments in the ALJ's written rationale for the RFC imposed; rather, Defendant states that because the ALJ explicitly stated that he considered the combined effects of Griffith's severe and nonsevere impairments, and the records reflect no functional limitation stemming from those nonsevere impairments, the ALJ properly formulated the RFC.

Notably, Griffith does not argue that finding his mental impairments to be non-severe at Step Two was error. However, Griffith contends that his non-severe impairments of adjustment disorder with mixed anxiety and depression and major depressive disorder were not properly considered at Step Four, and they impact his ability to perform his skilled and semiskilled past work. Therefore, he argues the ALJ failed to appropriately evaluate his mental limitations before finding he could perform past relevant work.

A. **Step Two Standard and the ALJ's Step Two Findings**

At Step Two, the ALJ found that only degenerative changes to the cervical spine, status post cervical fusion, and a history of occipital stroke causing left homonymous hemianopsia were severe impairments. (Tr. 12.) The ALJ concluded that mood disorder and a stimulant use disorder did not cause more than minimal limitation in Griffith's ability to perform basic mental work activities and therefore were non-severe impairments. (Tr. 12-13.)

6

When evaluating the severity of a claimant's mental impairments, an ALJ must first "evaluate[s] [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). The ALJ "then rate[s] the degree of functional limitation resulting from the impairment(s)" in four broad functional areas known as the "Paragraph B" criteria. *See* § 404.1520a(b)(2); *see, e.g.*, *Roades v. Astrue*, 861 F. Supp. 2d 983, 992 (E.D. Mo. 2012). The criteria are as follows: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). The ALJ rates the criteria using a five-point scale of none, mild, moderate, marked, and extreme. *See* § 404.1520(c)(4). If the ALJ rates the claimant's mental impairments as "none" or "mild," then the ALJ will generally conclude that the mental impairments are non-severe, unless the evidence indicates there is more than a minimal limitation in the claimant's ability to perform basic work activities. § 404.1520a(d)(1).

Here, at Step Two, the ALJ found Griffith had a mild limitation in each of the four paragraph B criteria. (Tr. 14.) In so finding, the ALJ relied on Griffith's August 9, 2020 Function Report, his hearing testimony, his generally unremarkable mental status examinations from his medical records, and a December 14, 2020 psychological consultative examination. (Tr. 12-13.) After discussing the above evidence, the ALJ determined that "[e]ven considering ongoing substance use treatment and an August 2021 instance of emergent care secondary to a suicide attempt (Exhibit B29F/169), the foregoing supports a finding that the claimant's consistent pursuit of psychiatric care has adequately addressed his longitudinal symptoms, such that he experiences no greater than mild limitations in any of the four areas of mental functioning." (Tr. 13.) The ALJ also considered the opinions of John Wood, Psy.D. (psychological consultative examiner) and

7

Steven Akeson, Psy.D. and Paul Midden, P.D. (non-examining state agency consultative examiners). (Tr. 13.)

> After finding mild limitations in each of the four categories, the ALJ explained:
> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. **The mental residual functional capacity assessment used at steps 4 and 5 of the sequential process requires a more detailed assessment.** The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. 13-14 (emphasis added)). As the ALJ acknowledged, a step two determination of "non-severe" is not necessarily the end of his inquiry. Instead, when crafting the RFC, the ALJ must also consider the combined effect of all of the claimant's impairments, without regard to whether any one impairment would be sufficiently severe to be disabling if considered separately. *Presson v. Saul*, Case No. 4:20 CV 516 SRW, 2021 WL 2554215, at *4 (E.D. Mo. Jun. 22, 2021) (internal citations omitted).

### B. Mental RFC Evaluation and Mild Limitations in Basic Work vs. Semiskilled or Skilled Work

Pursuant to the regulations, when the ALJ found Griffith's mental impairments to be non-severe, he found the impairments did not significantly limit plaintiff's ability to do <u>basic</u> work activities such as understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." Soc. Sec. Ruling (SSR) 96-8p.

8

The SSA has identified 14 basic mental abilities needed for any job, Program Operations Manual System (POMS) DI 25020.010(B)(2)[2], specific aspects of which are critical for performing unskilled work. *Id.* DI 25020.010(B)(3). The agency recognizes that semiskilled and skilled work require the 14 basic mental abilities noted above and often present "an **increasing requirement for understanding** and **memory** and for **concentration** and **persistence**, e.g.: the ability to: understand and remember detailed instructions, carry out detailed instructions, and set realistic goals or make plans independently of others." *Id.* DI 25020.010(B)(4) (bold in original). The agency recognizes that in semiskilled and skilled work "[o]ther special abilities may be needed depending upon the type of work and specific functions it involves." *Id.*

Although the ALJ determined that Griffith had mild limitations in understanding, remembering, and applying information; mild limitations in social interaction; mild limitations in concentration, persistence, or pace; and mild limitations in adapting and managing oneself, he did not include any mental limitation in the RFC. In making an RFC assessment, the ALJ first summarized Griffith's statements from his function report and his testimony at the March 10, 2022 hearing. Then the ALJ explained:

> While the claimant's ability to engage in these ordinary life activities is not itself conclusive proof that is also able to engage in substantial gainful activity, **his capacity to perform these tasks independently is a strong indication that he retains the capacity to perform the requisite physical *and mental tasks* that are part of everyday work activity**. **That indication finds further support in the objective medical signs and findings discussed in more detail below**. All of these factors, considered together, constitute sufficient evidence of the claimant's ability to engage in full-time, competitive work within the parameters of the above residual functional capacity.

(Tr. 16 (emphasis added)). Despite the ALJ's statement that Griffith's testimony indicates he has the capacity to perform mental tasks of every day activity and the ALJ's earlier statement at Step

---

[2] See https://secure.ssa.gov/poms.NSF/lnx/0425020010 (last visited Sept. 19, 2024).

Two that a more detailed assessment of mental residual functional capacity is required, the ALJ does not provide any further discussion or analysis as to why he did not include mental limitations in the RFC. In his briefing, Griffith criticizes the ALJ's failure to explain how Griffith's mental limitations would impact his ability to carry out his semiskilled and skilled past work. This argument is well taken. Though an ALJ is not required to discuss each specific piece of evidence in the record when making a disability determination, he must still provide a "logical bridge" between the RFC and the evidence. *Holdeman v. Kijakazi*, Case No. 20-cv-729-NKL, 2021 WL 6062368, at *4 (W.D. Mo. Dec. 22, 2021) (citing *Black v. City of Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

At the hearing, the ALJ stated that at a previous hearing the past relevant work was developed, and the work fell under two Dictionary of Occupational Titles ("DOT") classifications, retail store manager and receptionist. (Tr. 43.) The receptionist position was a semiskilled sedentary job with a specific vocational preparation level ("SVP") of 4, and the retail store manager position was a skilled light job with an SVP of 7. *Id.* The ALJ found that Griffith's RFC rendered him capable of performing this past relevant work based on the RFC determination. (Tr. 14.) However, there is no discussion in the ALJ's decision or in the hearing colloquy between the ALJ and the vocational expert regarding the increased mental abilities required to perform the jobs and no specific discussion or finding that Griffith has mental abilities greater than those necessary to perform basic mental work activities.

Perhaps Griffith has retained the mental abilities to perform his work as a retail store manager and receptionist. However, this court does not know what actual, specific mental abilities, if any, beyond the basic mental abilities required to perform unskilled work, are required for Griffith's past work, and the ALJ and the Commissioner have not addressed the issue. "[R]emand

10

is appropriate where the ALJ's factual findings, considered in the context of the record as a whole, are insufficient to permit the Court to conclude that substantial evidence supports the ALJ's decision, or where the ALJ fails to consider or discuss a crucial issue." *See Betty H. v. Berryhill*, No. 18-CV-1105 (LIB), 2019 WL 4898465, at *3 (D. Minn. Aug. 7, 2019). It is the duty of the ALJ to assess the RFC and to compare a claimant's RFC with the mental demands of a job, and the court may not substitute its judgment for that of the Commissioner. Therefore, the Court will remand for a proper evaluation of Griffith's mental abilities and how they compare to the mental abilities required to perform his skilled past relevant work.[3]

Upon reconsideration of appropriate evidence, the ALJ may well determine that Griffith is not disabled. The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after properly considering all evidence of record and undergoing the required analysis, but the determination is one the Commissioner must make in the first instance. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (when a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings); *Leeper v. Colvin*, No. 4:13-CV-367 ACL, 2014 WL 4713280 at *11 (E.D. Mo. Sept. 22, 2014) (ALJ duty to make disability determination).

## VI. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Griffith's Complaint and Brief in Support of Complaint is **GRANTED** in part and **DENIED** in part. (ECF Nos. 1, 10.)

---

[3] On remand, the ALJ may address other issues raised by Griffith in his briefing.

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings.

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will be filed contemporaneously with this Memorandum and Order remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

Dated this 24th day of September, 2024.

RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE